**ORIGINAL**

WATSON, FARLEY & WILLIAMS (NEW YORK) LLP
Counsel for Plaintiff
1133 Avenue of the Americas, 11th Floor
New York, NY 10036
Tel: (212) 922-2200
Fax: (212) 922-1512

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

09 CV        (    )

**VERIFIED COMPLAINT**

MADLIENA SHIPPING LTD.,

Plaintiff,

- against -

SINCERE NAVIGATION CORP.

Defendant.

Plaintiff, MADLIENA SHIPPING LTD. ("Madliena") by and through its attorneys, Watson, Farley & Williams (New York) LLP, as and for its Verified Complaint against Defendant SINCERE NAVIGATION CORP. ("Sincere"), alleges upon information and belief as follows:

1.      This is an admiralty and maritime claim within the meaning of Federal Rule of Civil Procedure ("F.R.Civ.P.") Rule 9(h) and 28 U.S.C. § 1333.

2.      At all times relevant to this action, Plaintiff Madliena was, and still is, a foreign corporation duly organized and operating under the laws of Malta, with an office located at 168 St. Christopher Street, Valletta, Malta.

3.      At all times relevant to this action, Defendant Sincere is and was a company organized under the laws of Taiwan, R.O.C., with an office at Yu Tai Enterprise Building, 14th Floor, 368 Fu Hsing South Road, Section 1, Taipei, Taiwan, R.O.C.

**THE CONTRACT**

4.     By a Memorandum of Agreement dated May 6, 2009 (the "MOA"), Sincere agreed to sell, and Madliena agreed to buy, M/V TIEN SHAN (the "Vessel"), an ocean-going bulk carrier.  Attached hereto as Exhibit 1 is a true and correct copy of the MOA.

5.     The MOA provides that Sincere was to deliver the Vessel to Madliena "after her next laden voyage from E.C. Australia to South Korea". Clause 5(b) of the MOA states:

> [t]he Vessel shall be delivered, 'as is where is' and taken over safely at a safe and accessible berth or anchorage at a safe port within Singapore/Japan range, including South Korea and Malaysia or within Skaw/Port Said range (excluding North Africa) including UK port in the Sellers option, charter free, cargo free. The vessel shall be delivered after her next laden voyage from E.C. Australia to South Korea which shall be performed after current discharge in Map Ta Hut, Thailand.

Exhibit 1.

6.     When the MOA was concluded, the parties expected the Vessel to complete the E.C. Australia to South Korea voyage in early June, 2009.

7.     Sincere provided a notice of delivery to Madliena, stating that the Vessel would be delivered in accordance with the MOA on June 10 or 11.

8.     Subsequently however, Sincere indicated that it might not be able to deliver the Vessel to Madliena in early June, as planned, because Sincere had not yet completed certain internal requirements related to the sale of the Vessel.

9.     Because Madliena had made active commercial preparations for receiving the Vessel, including stationing a representative aboard and positioning crew, the parties

entered into an addendum to the MOA, dated June 3, 2009 (the "Second Addendum").[1]

      10.    The Second Addendum provides:

A.    Pursuant to Clause 5 of the MOA, [Sincere] shall deliver the Vessel after her current laden voyage from Abbot Point, Australia to Dangjin, South Korea.

B.    [Madliena] have the option of taking the Vessel on time charter trip (TCT) for one Pacific round voyage via Australia and taking delivery thereafter or of taking delivery of the Vessel in South Korea no earlier that 26th June 2009.

Exhibit 1, Addendum 2.

      11.    In addition to explicitly providing Madliena with the option to time charter the Vessel, Addendum 2 contains all of the terms usually found in a charter party, including laydays, safe berth, anchorage, and port warranties, cargo restrictions, a trading range, a bunkering clause, and a daily time charter hire rate. Id.

      12.    Addendum 2 also contains a voyage description of "one TCT [time charter trip] Australia to Singapore / Japan range including South Korea and Malaysia". Id.

      13.    Addendum 2 also expressly incorporated the terms of another charter party to fill in those terms not explicitly stated in Addendum 2: "other terms as per c/p [charter party] 'Tien Shan/STX Panocean charter party dated 30 April 2009 with logical alterations". Id.

      14.    In preparation for the anticipated time charter of the Vessel, Madliena arranged to provide 500 MT of bunkers[2] to the Vessel.

      15.    Under Addendum 2, the Vessel was to be delivered to Madliena for the time charter trip between June 10, 2009 and June 15, 2009.

      16.    Addendum 2 thus contains clearly severable and distinct maritime

---

[1] The First Addendum, also dated June 3, 2009, relates to the documents to be provided at closing.

[2] Bunkers are heavy fuel oil (sometimes called "HFO") and are used to power a ship's main engines.

obligations from the obligations under the MOA.

17.     Addendum 2 was intended to allow Madliena to time charter the vessel from Sincere while Sincere completed its internal sale procedure.  Addendum 2 also provides that the Vessel was to be delivered under the MOA on June 26, 2009 in South Korea, thus providing a date when the Vessel would be ready for Madliena to take ownership.

18.     However, instead of complying with its obligation under Addendum 2, Sincere fixed the Vessel on an unrelated voyage with a third party, choosing to play the spot market to Madliena's detriment.

19.     The spot market voyage entered into by Sincere also resulted in the delivery of the Vessel being pushed back by approximately 1 month, to late July, 2009.

20.     Sincere delivered the Vessel under the MOA, on or about July 28, 2009.

21.     Madliena acted in reliance on Sincere's representations under Addendum 2 regarding the delivery of the vessel, and positioned crew and other resources on this basis.  These resources were left idle, but paid for by Madliena, while Sincere took the spot market voyage.

22.     In addition to the above preparations, Madliena positioned a representative aboard the Vessel in expectation of the time charter or delivery under the MOA, and who could not disembark prior to Sincere's commencement of the spot market voyage.

23.     In addition to costing Madliena the opportunity to earn money on the spot charter market, Sincere's decision to breach Addendum 2 cost Madliena a lucrative 81 day (estimated) time charter.

24.     The dispute between the parties regarding the interplay of Addendum 2

and the MOA is subject to English law and London arbitration.

25.    Attorneys' fees and costs are routinely awarded in English law arbitrations.

26.    In the U.K. arbitration, Plaintiff is entitled to recover:

| | |
|---|---|
| Net Lost Hire June 12 through July 27 | $1,949,950.00 |
| Crew standby costs | $4,800.00 |
| Goodwood supervision team (stuck aboard vessel during charter) | $16,700.00 |
| Replacement crew standby | $109,166.67 |
| Interest for 1 Year at 8% | $166,449.32 |
| Estimated Fees and Costs | $200,000.00 |
| **Total Claim** | **$2,447,065.90** |

27.    Plaintiff has prepared draft Claim Submissions and will initiate the underlying arbitration promptly, but has not done so yet because Plaintiff is attempting to first obtain security.

## AS AND FOR A FIRST CAUSE OF ACTION

## BREACH OF CHARTER

28.    Addendum 2 created an obligation on Defendant Sincere to time charter the Vessel to Madliena or to promptly deliver the Vessel under the MOA.

29.     Sincere's failure to comply with Addendum 2 constitutes a breach of charter and deprived Madliena of the use of the Vessel.

30.    Due to Sincere's breach, Madliena has been damaged in an amount of no less than **$2,447,065.90.**

## AS AND FOR A SECOND CAUSE OF ACTION

## BREACH OF DELIVERY WARRANTY

31.    Plaintiff repeats and re-alleges paragraphs 1 through 30 as if set forth herein at length.

32.    The Vessel completed the E.C. Australia / South Korea voyage on June 9, 2009 and was thus within the Singapore/Japan range, which is the place of delivery under clause 5(b) of the MOA.  Once the Vessel was physically ready for delivery, Sincere was obliged to deliver the Vessel under MOA clause 5(a).

33.    In breach of clause 5(a), the Seller failed to give a notice of readiness and to deliver the Vessel to Madliena on June 12, 2009.

34.    Further, Sincere had an obligation under clause 5(b) either as a matter of express obligation or as a matter of implied obligation to deliver the Vessel "promptly" after completion of the E.C Australia / South Korea voyage.

35.    In breach of clause 5(b), the Seller failed to deliver the Vessel promptly following completion of the E.C. Australia / South Korea voyage, instead performing the voyage described above.

36.    Due to Sincere's breach, Madliena has been damaged in an amount of no less than **$2,447,065.90.**

## PRAYER FOR RELIEF

37.    Defendant cannot be found in the Southern District of New York ("S.D.N.Y.")  within the meaning of F.R.Civ.P. Rule B of the Supplemental Rules for Admiralty and Maritime Claims.

38.    Accordingly, Plaintiff Madliena respectfully seeks the issuance of a

maritime writ of attachment in the amount of **$2,447,065.90**.

39.    Upon information and belief, the proceeds of the sale of the Vessel and other assets of the Defendant will be held in the hands of garnishees, including but not limited to ABN Amro, American Express Bank, Atlantic Bank of New York, Bank of America, Bank of China, State Bank of India, Bank of Tokyo-Mitsubishi, BNP Paribas, Barclay's Bank, Citibank, Deutsche Bank, HSBC USA Bank NA, JP Morgan Chase Bank, Korea Exchange Bank, Nordea Bank Norge ASA, Societe General, Standard Chartered Bank, The Bank of New York, UBS, Wachovia Bank, and/or other subsequently identified entities on whom a copy of the Process of Maritime Attachment and Garnishment may be served (the "Garnishees") which are believed to be sent by, owing to, or for the benefit of Defendant.

40.    Plaintiff seeks an Order from this Court directing the Clerk of the Court to issue Process of Maritime Attachment and Garnishment pursuant to F.R.Civ.P. Rule B attaching any and all assets of Defendant up to the amount of **$2,447,065.90** held by the Garnishees for the purpose of obtaining personal jurisdiction over Defendant and to secure an eventual Award as described above.

WHEREFORE, Plaintiff Madliena prays:

a.    That process in due form of law issue against Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

b.    That, since Defendant cannot be found within the S.D.N.Y. pursuant to F.R.Civ.P. Rule B, this Court issue an Order directing the Clerk of the Court to issue Process of Maritime Attachment and Garnishment pursuant to F.R.Civ.P. Rule B

attaching all property, tangible or intangible, in whatever form or any other funds held by any of the Garnishees, which are sent by or due and owning to Defendant in the amount of **$2,447,065.90** to secure Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and, pursuant to F.R.Civ.P. Rule B and E, Answer the matters alleged in the Verified Complaint;

      c.     That this Court retain jurisdiction over this matter through the entry of any judgment or further award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof; and

      d.     That Plaintiff Madliena have such other, further and different relief as the Court may deem just and proper in law and equity.

Dated: New York, New York
       July 28, 2009

                WATSON, FARLEY & WILLIAMS (NEW YORK) LLP
                ATTORNEYS FOR MADLIENA SHIPPING LTD.

By:

                Alfred E. Yudes (AEY-4152)
                Neil A. Quartaro (NAQ-9640)
                1133 Avenue of the Americas, 11th Floor
                New York, NY 10036
                Tel: (212) 922-2200
                Fax: (212) 922-1512

STATE OF NEW YORK      )
                       )  ss:
COUNTY OF NEW YORK  )

     Neil A. Quartaro, being duly sworn, deposes and says:

I am an attorney with the law firm of Watson, Farley & Williams (New York) LLP, counsel for the Plaintiff MADLIENA SHIPPING LTD., herein and I have read the foregoing Verified Complaint and know the contents thereof and that same are true to my own knowledge, except to matters herein stated to alleged on information and belief, and as to those matters I believe them to be true.

The source of my information is documents, records and other information submitted to me by, or on behalf of, the Plaintiff.

This verification is made by me because Plaintiff is a foreign corporation.

                              Neil A. Quartaro

Sworn to before me
this day of July 28, 2009

_____
Notary Public

Daniel Rodgers
No. 02RO6122869
Qualified in New York County
Certificate Filed in New York County
Commission Expires February 22, 2009

EXHIBIT 1

# MEMORANDUM OF AGREEMENT

| |
|---|
| Norwegian Shipbrokers' Association's Memorandum of Agreement for sale and purchase of ships. Adopted by The Baltic and International Maritime Council (BIMCO) in 1956. Code-name **SALEFORM 1993** Revised 1966, 1983 and 1986/87. |

Dated: *6th May 2009*

*Sincere Navigation Corporation, 14th Floor Yu Tai Enterprise Building, 368 Fu Hsing South Road Section 1 Taipei, Taiwan, R.O.C.*
hereinafter called the Sellers, have agreed to sell, and *Madliena Shipping Limited of*                                                    1
*168 St Christopher  Street, Valletta VLT1467, Malta, as nominated by Grover Star Shipping Corp Inc, 80 Broad Street, Monrovia, Liberia*

hereinafter called the Buyers, have agreed to buy *MV 'Tien Shan'*                                                    2


Name: *'Tien Shan'*                                                    3

Classification Society/Class: *NK/CR*                                                    4

Built: *1994*                          By: *Tsuneishi Shipbuilding Co.,Ltd., Japan*                                                    5

Flag: *Republic Of China* Place of Registration: *Kaohsiung*                                                    6

Call Sign: *BKFV*                 Grt/Nrt: *GT / NT : 66,623 / 42,726*                                                    7

Register Number: *012566*                                                    8

hereinafter called the Vessel, on the following terms and conditions:                                                    9

Definitions                                                    10

"Banking days" are days on which banks are open both in the country of the currency                    11
stipulated for the Purchase Price in Clause 1 and in the place of closing stipulated in Clause 8.                    12

"In writing" or "written" means a letter handed over from the Sellers to the Buyers or vice versa,                    13
a registered letter, telex, telefax ~~or other modern form of written communication~~.                    14

"Classification Society" or "Class" means the Society referred to in line 4.                                                    15

1.      Purchase   Price   USD   *19,000,000   (Nineteen   Million   United   States   Dollars)*                    16


2.      Deposit                                                    17

As security for the correct fulfilment of this Agreement the Buyers shall pay a deposit of 20% ~~10 %~~                    18
*(twenty per cent)*~~(ten per cent)~~ of the Purchase Price within *3 (three)*    banking days *(Sunday/holidays*                    19
*both in USA and HK excluded) after signing of this agreement by both parties on fax copies.* ~~from the date of this~~
~~Agreement.~~ This deposit shall be placed with *BNP Paribas Hong Kong (SWIFT :*                    20
*BNPAHKHH) for account of Sincere Navigation Corporation (Seller) and*
*Madliena Shipping Limited (Buyer nominated by Grover Star Shipping*
*Corp.) account no. 00001-204900-008-29  USD Message - attention :*
*Gary Lee - Asia Shipping Division" deposit money for m.v. Tien Shan,*
*Covering bank : BNP Paribas New York (SWIFT BNPA US3N)*

and held by them in a joint account for the Sellers and the Buyers, to be released in accordance                    21
with joint written instructions of the Sellers and the Buyers. Interest *earned, if any, less cost charged by*                    22
*the bank* to be credited to the
Buyers *account.* Any fee charged for holding the said deposit shall be borne equally by the Sellers and the                    23
Buyers.                                                    24

3.      Payment                                                                                    25

The said Purchase Price shall be paid in full free of bank charges to :                            26
*BNP Paribas Hong Kong (SWIFT : BNPAHKHH) for account of Sincere Navigation Corporation,*
*account no. 06001 000669 008 95 USD Message - attention : Gary Lee -*
*Asia Shipping Division" purchase money for m.v. Tien Shan, Covering*
*bank : BNP Paribas New York (SWIFT BNPAUS3N).*

on delivery of the Vessel, but not later than 3 banking days *(Sunday/holiday both in USA and HK*    27
*excluded)* after the Vessel is in every respect
physically ready for delivery in accordance with the terms and conditions of this Agreement and     28
Notice of Readiness has been given in accordance with Clause 5.                                     29

4.      Inspections                                                                                 30

a)*     The Buyers have inspected and accepted the Vessel's *NK/CR* classification records. The     31
        Buyers
        have also inspected the Vessel at/in *Abbott Point, Australia* on *12th March 2009*          32
        and have accepted the Vessel following this inspection and the sale is outright and definite, 33
        subject only to the terms and conditions of this Agreement.                                 34

b)*     ~~The Buyers shall have the right to inspect the Vessel's classification records and declare~~  35
        ~~whether came are accepted or not within~~                                                 36

        ~~The Sellers shall provide for inspection of the Vessel at/in~~                             37

        ~~The Buyers shall undertake the inspection without undue delay to the Vessel. Should the~~    38
        ~~Buyers cause undue delay they shall compensate the Sellers for the losses thereby incurred.~~  39
        ~~The Buyers shall inspect the Vessel without opening up and without cost to the Sellers.~~    40
        ~~During the inspection, the Vessel's deck and engine log books shall be made available for~~  41
        ~~examination by the Buyers. If the Vessel is accepted after such inspection, the sale shall~~  42
        ~~become outright and definite, subject only to the terms and conditions of this Agreement,~~  43
        ~~provided the Sellers receive written notice of acceptance from the Buyers within 72 hours~~  44
        ~~after completion of such inspection.~~                                                     45
        ~~Should notice of acceptance of the Vessel's classification records and of the Vessel not be~~  46
        ~~received by the Sellers as aforesaid, the deposit together with interest earned shall be~~  47
        ~~released immediately to the Buyers, whereafter this Agreement shall be null and void.~~     48

*       *4 a) and 4b) are alternatives; delete whichever is not applicable. In the absence of deletions,*  49
        *alternative 4a) to apply.*                                                                 50

5.      Notices, time and place of delivery                                                         51

a)      The Sellers shall keep the Buyers well informed of the Vessel's itinerary and shall         52
        provide the Buyers with *30* , *15* , and *10* days *approximate* notice of *delivery and 3/2/1 days*  53
        *definite notice of delivery.* Sellers to advise Buyers the delivery range and likely delivery
        *port together with their first notice of delivery.*~~the estimated time of arrival at the~~  54
        ~~intended place of drydocking/underwater inspection/delivery.~~ When the Vessel is at the place  55
        of delivery and in every respect physically ready for delivery in accordance with this       56
        Agreement, the Sellers shall give the Buyers a written Notice of Readiness for delivery.

b)      The Vessel shall be delivered, *'as is where is'* and taken over safely afloat at a safe and   57
        accessible berth or
        enchorage *at a safe port* at/in *within Singapore/Japan range, including South Korea and*    58
        *Malaysia or within Skaw/Port Said range (excluding North Africa) including UK*
        *port in the Sellers' option, charter free, cargo free. The vessel shall be delivered after her*  59
        *next laden voyage from E.C. Australia to South Korea which shall be performed after*
        *current discharge in Map Ta Phut, Thailand.*

        Expected time of delivery: *June/August 2009*                                               60

        Date of cancelling (see Clauses 5 c), 6 b) (ii) and 14): *31st August 2009 in Buyers' option.*  61



c)      If the Sellers anticipate that, notwithstanding the exercise of due diligence by them, the            62
        Vessel will not be ready for delivery by the cancelling date they may notify the Buyers in            63
        writing stating the date when they anticipate that the Vessel will be ready for delivery and          64
        propose a new cancelling date. Upon receipt of such notification the Buyers shall have the            65
        option of either cancelling this Agreement in accordance with Clause 14 within ~~7~~ 3 running        66
        days of receipt of the notice or of accepting the new date as the new cancelling date. If the         67
        Buyers have not declared their option within ~~7~~ 3 running days of receipt of the Sellers'          68
        notification or if the Buyers accept the new date, the date proposed in the Sellers' notification     69
        shall be deemed to be the new cancelling date and shall be substituted for the cancelling             70
        date stipulated in line 61.                                                                            71

        If this Agreement is maintained with the new cancelling date all other terms and conditions           72
        hereof including those contained in Clauses 5 a) and 5 c) shall remain unaltered and in full          73
        force and effect. Cancellation or failure to cancel shall be entirely without prejudice to any        74
        claim for damages the Buyers may have under Clause 14 for the Vessel not being ready by               75
        the original cancelling date.                                                                          76

d)      Should the Vessel become an actual, constructive or compromised total loss before delivery            77
        the deposit together with interest earned shall be released immediately to the Buyers                 78
        whereafter this Agreement shall be null and void.                                                      79

6.      **Drydocking/Divers Inspection (See Rider Clause 17)**                                                 80

a)**    ~~The Sellers shall place the Vessel in drydock at the port of delivery for inspection by the~~        81
        ~~Classification Society of the Vessel's underwater parts below the deepest load line, the~~           82
        ~~extent of the inspection being in accordance with the Classification Society's rules. If the~~       83
        ~~rudder, propeller, bottom or other underwater parts below the deepest load line are found~~          84
        ~~broken, damaged or defective so as to affect the Vessel's class, such defects shall be made~~        85
        ~~good at the Sellers' expense to the satisfaction of the Classification Society without~~             86
        ~~condition/recommendation".~~                                                                          87

b)**    ~~(i) The Vessel is to be delivered without drydocking. However, the Buyers shall~~                    88
        ~~have the right at their expense to arrange for an underwater inspection by a diver approved~~        89
        ~~by the Classification Society prior to the delivery of the Vessel. The Sellers shall at their~~      90
        ~~cost make the Vessel available for such inspection. The extent of the inspection and the~~          91
        ~~conditions under which it is performed shall be to the satisfaction of the Classification~~          92
        ~~Society. If the conditions at the port of delivery are unsuitable for such inspection, the~~        93
        ~~Sellers shall make the Vessel available at a suitable alternative place near to the delivery~~       94
        ~~port.~~                                                                                               95

        ~~(ii) If the rudder, propeller, bottom or other underwater parts below the deepest load line~~        96
        ~~are found broken, damaged or defective so as to affect the Vessel's class, then unless~~             97
        ~~repairs can be carried out afloat to the satisfaction of the Classification Society, the Sellers~~   98
        ~~shall arrange for the Vessel to be drydocked at their expense for inspection by the~~                99
        ~~Classification Society of the Vessel's underwater parts below the deepest load line, the~~          100
        ~~extent of the inspection being in accordance with the Classification Society's rules. If the~~      101
        ~~rudder, propeller, bottom or other underwater parts below the deepest load line are found~~         102
        ~~broken, damaged or defective so as to affect the Vessel's class, such defects shall be made~~       103
        ~~good by the Sellers at their expense to the satisfaction of the Classification Society~~            104
        ~~without condition/recommendation". In such event the Sellers are to pay also for the cost of~~      105
        ~~the underwater inspection and the Classification Society's attendance.~~                            106

        ~~(iii) If the Vessel is to be drydocked pursuant to Clause 6 b) (ii) and no suitable dry-~~          107
        ~~docking facilities are available at the port of delivery, the Sellers shall take the Vessel~~       108
        ~~to a port where suitable drydocking facilities are available, whether within or outside the~~       109
        ~~delivery range as per Clause 5 b). Once drydocking has taken place the Sellers shall deliver~~       110
        ~~the Vessel at a port within the delivery range as per Clause 5 b) which shall, for the~~            111
        ~~purpose of this Clause, become the new port of delivery. In such event the cancelling date~~        112
        ~~provided for in Clause 5 b) shall be extended by the additional time required for the~~             113
        ~~drydocking and extra steaming, but limited to a maximum of 14 running days.~~                       114

c)      ~~If the Vessel is drydocked pursuant to Clause 6 a) or 6 b) above~~                                  115

        ~~(i) the Classification Society may require survey of the tailshaft system, the extent of~~          116



the survey being to the satisfaction of the Classification surveyor. If such survey is not     117
required by the Classification Society, the Buyers shall have the right to require the tailshaft     118
to be drawn and surveyed by the Classification Society, the extent of the survey being in     119
accordance with the Classification Society's rules for tailshaft survey and consistent with     120
the current stage of the Vessel's survey cycle. The Buyers shall declare whether they     121
require the tailshaft to be drawn and surveyed not later than by the completion of the     122
inspection by the Classification Society. The drawing and refitting of the tailshaft shall be     123
arranged by the Sellers. Should any parts of the tailshaft system be condemned or found     124
defective so as to affect the Vessel's class, these parts shall be renewed or made good at     125
the Sellers' expense to the satisfaction of the Classification Society without     126
condition/recommendation*.     127

(ii) the expenses relating to the survey of the tailshaft system shall be borne     128
by the Buyers unless the Classification Society requires such survey to be carried out, in     129
which case the Sellers shall pay these expenses. The Sellers shall also pay the expenses     130
if the Buyers require the survey and parts of the system are condemned or found defective     131
or broken so as to affect the Vessel's class*.     132

(iii) the expenses in connection with putting the Vessel in and taking her out of     133
drydock, including the drydock dues and the Classification Society's fees shall be paid by     134
the Sellers if the Classification Society issues any condition/recommendation* as a result     135
of the survey or if it requires survey of the tailshaft system. In all other cases the Buyers     136
shall pay the aforesaid expenses, dues and fees.     137

(iv) the Buyers' representative shall have the right to be present in the drydock, but     138
without interfering with the work or decisions of the Classification surveyor.     139

(v) the Buyers shall have the right to have the underwater parts of the Vessel     140
cleaned and painted at their risk and expense without interfering with the Sellers' or the     141
Classification surveyor's work, if any, and without affecting the Vessel's timely delivery. If,     142
however, the Buyers' work in drydock is still in progress when the Sellers have     143
completed the work which the Sellers are required to do, the additional docking time     144
needed to complete the Buyers' work shall be for the Buyers' risk and expense. In the event     145
that the Buyers' work requires such additional time, the Sellers may upon completion of the     146
Sellers' work tender Notice of Readiness for delivery whilst the Vessel is still in drydock     147
and the Buyers shall be obliged to take delivery in accordance with Clause 3, whether     148
the Vessel is in drydock or not and irrespective of Clause 5 b).     149

*     Notes, if any, in the surveyor's report which are accepted by the Classification Society     150
without condition/recommendation are not to be taken into account.     151

**     5 a) and 5 b) are alternatives; delete whichever is not applicable. In the absence of deletions,     152
alternative 5 a) to apply.     153

7.     Spares/bunkers, etc.     154

The Sellers shall deliver the Vessel to the Buyers with everything belonging to her on board and on     155
shore, *and on order including Navigation aids which is ship's property. Also included are spares,*     156
*stores and provisions as onboard without any extra, but excluding hired items and Captain/Crew*
*personal effects and slop chest.* All spare parts and spare equipment including spare tail end shaft(s)
and/or spare
propeller(s)/propeller blade(s), if any, belonging to the Vessel at the time of inspection used or     157
unused, whether on board or not shall become the Buyers' property, but spares on order are to be     158
excluded. Forwarding charges, if any, shall be for the Buyers' account. The Sellers are not required to     159
replace spare parts including spare tail end shaft(s) and spare propeller(s)/propeller blade(s) which     160
are taken out of spare and used as replacement prior to delivery, but the replaced items shall be the     161
property of the Buyers. The radio installation and navigational equipment shall be included in the sale     162
without extra payment if they are the property of the Sellers. Unused stores and provisions shall be     163
included in the sale and be taken over by the Buyers without extra payment. *Vessel has no spare*     164
*propeller nor spare tail end shaft.*

The Sellers have the right to take ashore crockery, plates, cutlery, linen and other articles bearing the     165
Sellers' flag or name, provided they replace same with similar unmarked items. Library, forms, etc.,     166
exclusively for use in the Sellers' vessel(s), shall be excluded without compensation. Captain's,     167
Officers' and Crew's personal belongings including the slop chest are to be excluded from the sale,     168
as well as the following additional items (including items on hire): *Drew Amerold/Unitor gas bottles*     169



*and Videotel Training Tapes/Disks.*

*At the time of delivery, the ~~The~~ Buyers shall take over and pay for the costs of the remaining bunkers and Marine Diesel Oil as onboard at Platt's published mean price for IFO 380 CST and Marine Diesel Oil current at the date / port of delivery. If the delivery port is not listed in the Platt Oilgram price list, then the Platt's published prices at the nearest bunkering port to apply. Buyers to take over and pay for the costs of unused lubricating oils in tanks and in unbroached drums as onboard at Sellers net contract price plus barge cost (if any) as evidenced by paid vouchers or invoices where available. However, where supportive vouchers is not available, then Buyers to settle the lubricating oil costs at net contract prices as quoted in the area where Sellers last supplied the cylinder oil and system oil.* 170
~~unused lubricating oils in storage tanks and~~
~~sealed drums and pay the current net market price (excluding barging expenses) at the port and date~~ 171
~~of delivery of the Vessel.~~ 172
Payment under this Clause shall be made at the same time and place and in the same currency as 173
the Purchase Price. 174

8.    Documentation    175

*List of delivery document to be  mutually agreed after MOA*
*signed and deposit lodged and to be incorporated into an addendum.*

The place of closing: *BNP Paribas office in Hong Kong*    176

~~In exchange for payment of the Purchase Price the Sellers shall furnish the Buyers with delivery~~ 177
~~documents, namely:~~ 178

~~a)    Legal Bill of Sale in a form recordable in                          (the country in which the Buyers are~~ 179
~~to register the Vessel), warranting that the Vessel is free from all encumbrances, mortgages~~ 180
~~and maritime liens or any other debts or claims whatsoever, duly notarially attested and~~ 181
~~legalized by the consul of such country or other competent authority.~~ 182

~~b)    Current Certificate of Ownership issued by the competent authorities of the flag state of~~ 183
~~the Vessel.~~ 184

~~c)    Confirmation of Class issued within 72 hours prior to delivery.~~ 185

~~d)    Current Certificate issued by the competent authorities stating that the Vessel is free from~~ 186
~~registered encumbrances.~~ 187

~~e)    Certificate of Deletion of the Vessel from the Vessel's registry or other official evidence of~~ 188
~~deletion appropriate to the Vessel's registry at the time of delivery, or, in the event that the~~ 189
~~registry does not as a matter of practice issue such documentation immediately, a written~~ 190
~~undertaking by the Sellers to effect deletion from the Vessel's registry forthwith and furnish a~~ 191
~~Certificate or other official evidence of deletion to the Buyers promptly and latest within 4~~ 192
~~(four) weeks after the Purchase Price has been paid and the Vessel has been delivered.~~ 193

~~f)    Any such additional documents as may reasonably be required by the competent authorities~~ 194
~~for the purpose of registering the Vessel, provided the Buyers notify the Sellers of any such~~ 195
~~documents as soon as possible after the date of this Agreement.~~ 196

~~At the time of delivery the Buyers and Sellers shall sign and deliver to each other a Protocol of~~ 197
~~Delivery and Acceptance confirming the date and time of delivery of the Vessel from the Sellers to the~~ 198
~~Buyers.~~ 199

At the time of delivery the Sellers shall hand to the Buyers the classification certificate(s) as well as all 200
plans etc., which are on board the Vessel. Other certificates which are on board the Vessel shall also 201
be handed over to the Buyers unless the Sellers are required to retain same, in which case the 202
Buyers  to  have  the  right  to  take  copies.  Other  technical  documentation  which  may 203
be in the Sellers' possession shall be promptly forwarded to the Buyers at their expense, if they so 204
request. The Sellers may keep the Vessel's log books but the Buyers to have the right to take 205
copies of same. 206



9.      **Encumbrances**                                                                              207

The Sellers warrant that the Vessel, at the time of delivery, is free from all charters, encumbrances,   208
mortgages and maritime liens or any other debts whatsoever. The Sellers hereby undertake             209
to indemnify the Buyers against all consequences of claims made against the Vessel which have       210
been incurred prior to the time of delivery.                                                         211

10.     **Taxes, etc.**                                                                               212

Any taxes, fees and expenses in connection with the purchase and registration under the Buyers' flag   213
shall be for the Buyers' account, whereas similar charges in connection with the closing of the Sellers'   214
register shall be for the Sellers' account.                                                          215

11.     **Condition on delivery**                                                                     216

The Vessel with everything belonging to her shall be at the Sellers' risk and expense until she is    217
delivered to the Buyers, but subject to the terms and conditions of this Agreement she shall be       218
delivered and taken over *'as is where is'* as she was at the time of inspection, fair wear and tear   219
excepted.
However, the Vessel shall be delivered with her *present* class maintained, *free of ~~without condition/~~*   220
*~~recommendation*~~,
*and free of average damage to affect her classification* ~~affecting the Vessel's class, and~~ with *all* her   221
~~classification, certificates and~~
national/*International trading* certificates *to be clean, without extensions, and valid for at least 3*   222
*months from date of delivery, with CSM cycle clean and up-to-date. Vessel to be delivered with*
*cargo holds swept clean.* ~~as well as all other certificates the Vessel had at the time of inspection, valid~~
~~and~~
~~unextended without condition/recommendation' by Class or the relevant authorities at the time of~~   223
~~delivery.~~
~~"Inspection" in this Clause 11, shall mean the Buyers' Inspection according to Clause 4 a) or 4 b), if~~   224
~~applicable, or the Buyers' inspection prior to the signing of this Agreement. If the Vessel is taken over~~   225
~~without inspection, the date of this Agreement shall be the relevant date.~~                         226
                                                                                                      227

*       Notes, if any, in the surveyor's report which are accepted by the Classification Society      228
        without condition/recommendation are not to be taken into account.                            229

12.     **Name/markings**                                                                             230

Upon delivery the Buyers undertake to change the name of the Vessel and alter funnel markings.        231

13.     **Buyers' default**                                                                           232

Should the deposit not be paid in accordance with Clause 2, the Sellers have the right to cancel this   233
Agreement, and they shall be entitled to claim compensation for their losses and for all expenses     234
incurred together with interest.                                                                      235
Should the Purchase Price not be paid in accordance with Clause 3, the Sellers have the right to      236
cancel the Agreement, in which case the deposit together with interest earned shall be released to the   237
Sellers. If the deposit does not cover their loss, the Sellers shall be entitled to claim further     238
compensation for their losses and for all expenses incurred together with interest.                   239

14.     **Sellers' default**                                                                          240

Should the Sellers fail to give Notice of Readiness in accordance with Clause 5 a) or fail to be ready   241
to validly complete a legal transfer by the date stipulated in line 61 *or at such date that may have been*   242
*extended pursuant to this agreement* the Buyers shall have
the option of cancelling this Agreement provided always that the Sellers shall be granted a           243
maximum of 3 banking days after Notice of Readiness has been given to make arrangements               244
for the documentation set out in Clause 8. If after Notice of Readiness has been given but before     245
the Buyers have taken delivery, the Vessel ceases to be physically ready for delivery and is not      246
made physically ready again in every respect by the date stipulated in line 61 *or at such date that may*   247



*have been extended pursuant to this agreement* and new Notice of
Readiness given, the Buyers shall retain their option to cancel. In the event that the Buyers elect    248
to cancel this Agreement the deposit together with interest earned shall be released to them    249
immediately.    250
Should the Sellers fail to give Notice of Readiness by the date stipulated in line 61 *or at such date that*    251
*may have been extended pursuant to this agreement* or fail to be ready
to validly complete a legal transfer as aforesaid they shall make due compensation to the Buyers for    252
their loss and for all expenses together with interest if their failure is due to proven    253
negligence and whether or not the Buyers cancel this Agreement.    254

15.    Buyers' representatives    255

After this Agreement has been signed by both parties and the deposit has been lodged, the Buyers    256
have the right to place two representatives on board the Vessel *during the last voyage prior to*    257
*delivery* at their sole risk and expense. ~~upon~~
~~arrival at                                         on or about~~    258
These representatives are on board for the purpose of familiarisation and in the capacity of    259
observers only, and they shall not interfere in any respect with the operation of the Vessel. The    260
Buyers' representatives shall sign the Sellers' letter of indemnity prior to their embarkation.    261

16.    Arbitration    262

a)*    This Agreement shall be governed by and construed in accordance with English law and    263
        any dispute arising out of this Agreement shall be referred to arbitration in London in    264
        accordance with the Arbitration Acts ~~1950 and 1979~~ *1996* or any statutory modification or    265
        re-enactment thereof for the time being in force, one arbitrator being appointed by each    266
        party. On the receipt by one party of the nomination in writing of the other party's arbitrator,    267
        that party shall appoint their arbitrator within fourteen days, failing which the decision of the    268
        single arbitrator appointed shall apply. If two arbitrators properly appointed shall not agree    269
        they shall appoint an umpire whose decision shall be final. *The arbitrators shall be members*    270
        *of the London Maritime Arbitrators Association.*

b)*    ~~This Agreement shall be governed by and construed in accordance with Title 9 of the~~    271
        ~~United States Code and the Law of the State of New York and should any dispute arise out of~~    272
        ~~this Agreement, the matter in dispute shall be referred to three persons at New York, one to~~    273
        ~~be appointed by each of the parties hereto, and the third by the two so chosen; their~~    274
        ~~decision or that of any two of them shall be final, and for purpose of enforcing any award, this~~    275
        ~~Agreement may be made a rule of the Court.~~    276
        ~~The proceedings shall be conducted in accordance with the rules of the Society of Maritime~~    277
        ~~Arbitrators, Inc. New York.~~    278

c)*    ~~Any dispute arising out of this Agreement shall be referred to arbitration at~~    279
                                                    ~~, subject to the procedures applicable there.~~    280
        ~~The laws of~~                            ~~shall govern this Agreement.~~    281

*        *16 a), 16 b) and 16 c) are alternatives; delete whichever is not applicable. In the absence of*    282
        *deletions, alternative 16 a) to apply.*    283

*Additional clauses 17-19, as attached below, form an integral part of this Memorandum of*
*Agreement.*

*Rider Clauses:-*

*17. Vessel to be delivered without dry-docking, however, Buyers have the option at their own cost to*
*employ a class recognized diver to inspect Vessel's bottom and underwater part at least two days*
*prior delivery. If any damage is found and the attending class surveyor considers such damage will*
*affect class or will impose a condition of class which is effecting her clean condition of class, then*
*the Owner to arrange according to paragraph a) or b) below whichever applicable.*

*a) In the event that class imposes a condition that would require the Vessel to be drydocked before*
*her next scheduled drydocking, then the Sellers shall arrange at their expense for the Vessel to be*
*drydocked in accordance with Clause 6 of NSF 1993 and they shall repair the damage to class*
*satisfaction to obtain a clean certificate of class without conditions or recommendations prior to*



*delivery to the Buyers.*

*The decision of class as to whether underwater damage, if any, imposes a condition of class shall be final and binding of the parties. In the event that the Vessel is required to be drydocked as per (a) above the Sellers have the right to take the Vessel from the intended delivery port and proceed directly in ballast to a port in the Sellers' option where such drydocking and repairs to take place which place to be within Vessel's delivery range as per Clause 4, it is agreed that the cancelling date shall be extended per day pro-rata for the extra time taken to deliver the Vessel caused by ballasting/drydocking/repairs as required to be carried out to class satisfaction as above.*

*Whilst the Vessel is in drydock the Buyers shall have the right to attend the Vessel and to have the right to clean, paint and carry out their reasonable works whilst she is in drydock at the Buyers' risk and expense provided same does not interfere with the Seller's work and the Buyers work to be subjected to the Sellers' attending superintendent's approval which however not be unreasonably withheld.*

*In the event that the Buyers' works are not completed prior to the time the Sellers have completed their work, the Sellers have the right to tender notice of readiness whilst Vessel is still in drydock provided they are in all respects ready to deliver the Vessel in accordance with the terms of the M.O.A. should the Buyers' work still not be completed and the Vessel be unable to leave drydock because of this work within three (3) banking days after the Sellers have tendered N.O.R. then the Buyers shall take delivery of the Vessel in drydock and pay for the Vessel even though she remains in drydock.*
*The cost for docking and undocking shall be for the Sellers' account but any extra time and expense spent in drydock after N.O.R. has been tendered by the Sellers shall be for the Buyers' account.*

*b) If the diver's inspection reveals damage to the underwater parts which would affect the class, but the class surveyor approved the repair to be deferred and the Vessel to trade until her next drydocking, the Buyers and Sellers shall mutually agree a monetary compensation in lieu of actual repair, which shall pay to the Buyers by deduct from the purchase money at the time of closing. In the event that agreement cannot be reached, then the sum to be based upon the average of two quotations from two respectable shipyards close to the delivery port but within the delivery range, one obtained by each party, to quantify the costs of repair estimated for compensation.*

*18. The negotiation to be kept strictly private and confidential.*

*19. This sale is subject to vessel's flag state administration, the Ministry Of Transportation and Communications R.O.C. to approve the sale within ten working days after agreement of main terms.*

SINCERE NAVIGATION CORPORATION

_____ *President*

**The Sellers**
**Sincere Navigation Corporation**

**The Buyers**
**Madliena Shipping Limited**

This document is a computer generated copy of "SALEFORM 1993", printed by authority of the Norwegian Shipbrokers' Association, using software which is the copyright of Strategic Software Ltd. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the preprinted text of this document, the original document shall apply. The Norwegian Shipbrokers' Association and Strategic Software Ltd. assume no responsibility for any loss or damage caused as a result of discrepancies between the original approved document and this document.



 **BNP PARIBAS**

DATE   : 03.06.2009                          TO: SINCERE NAVIGATION CORPORATION (S)
OUR REF : IRG67136                               AND MADLIENA SHIPPING LIMITED (B)
                                                 ASIA SHIPPING DIVISION
                                                 BNP PARIBAS HK BR

CREDIT ADVICE
- - - - - - - - - - - - -

WE HAVE TODAY CREDITED YOUR ACCOUNT NO. : 00001-20490000829

WITH : USD            3 800 000.00

                    AMOUNT OF PAYMENT : USD            3 800 000.00

                    @ (EXCHANGE RATE) :

LESS

                    CABLE CHARGES        :

                    COMMISSION           :

                    POSTAGE              :

            CORR. CHARGES / TAX          :

            NET AMOUNT CREDITED          : USD            3 800 000.00

            BY ORDER OF                  : GROVER STAR SHIPPING CORPORATION
                                           PO BOX 48 SIR WALTER RALEIGH HOUSE
                                           48-50 THE ESPLANADE ST HELIER  JERS
                                           EY JE4 8NK

            REMITTING BANK               : ROYAL BANK OF SCOTLAND INTERNATIONA
                                           ST. HELIER            JERSEY, C.I.

            MESSAGE                      : ATTN: GARY LEE,
                                           ASIA SHIPPING DIVISION
                                           DEPOSIT MONEY FOR
                                           MV TIEN SHAN

N.B. IT IS UNDERSTOOD THAT IN CASE OF ERROR OR IRREGULARITIES
     BEING FOUND, WE RESERVE THE  RIGHT TO  HAVE YOUR ACCOUNT
     DEBITED FOR THE WHOLE AMOUNT PLUS CHARGES,   INTEREST AND
     OTHER EXPENSES , IF ANY.

                              YOURS FAITHFULLY
                                BNP PARIBAS
                           (NO SIGNATURE REQUIRED)

**BNP PARIBAS HONG KONG BRANCH**  法 國 巴 黎 銀 行 香 港 分 行
Incorporated in France with Limited Liability - Registered Office: 16 Boulevard des Italiens 75009 Paris, FRANCE
Cash Management Services
59-63/F Two International Finance Centre, 8 Finance Street, Central, Hong Kong
Tel: +852 2909 8888   SWIFT BIC: BNPAHKHH   GPO Box 763, Hong Kong

 

# ADDENDUM No.1

Dated 3rd June 2009

to the

## MEMORANDUM OF AGREEMENT
dated 6th May 2009
(hereinafter called "the MOA")

between

## SINCERE NAVIGATION CORPORATION of the Republic of China
(hereinafter called "the Sellers")

and

## MADLIENA SHIPPING LIMITED of Malta
(hereinafter called "the Buyers")

in respect of the motor vessel **"TIEN SHAN"**
(hereinafter called "the Vessel")

---

(A)  It is hereby agreed between the Sellers and the Buyers that the documents to be produced by the Sellers at closing pursuant to Clause 8 of the MOA shall be as follows:-

A.   ·   Bill Of Sale (in Malta 1A format) in two (2) originals, evidencing the transfer of ownership of all shares in the Vessel from the Sellers to the Buyers and stating that the Vessel is free from all mortgages, taxes, encumbrances, maritime liens or any other debts whatsoever, with Sellers' representative's signature notarially attested as to genuineness and capacity to act on behalf of the Sellers, and legalized by U.K.Consulate or Apostille in Hong Kong.

B.   Copy of resolutions of the board of directors of the Sellers approving the Sale of the Vessel from the Sellers to the

Buyers and authorising the execution of the Bill of Sale and related delivery documents, including the Protocol of Delivery and Acceptance, notarially attested and legalized by U.K.Consulate or Apostille in Hong Kong.

C.  Copy of Sellers' Trading Permit in Chinese Version. This permit to be translated in English by a recognized Translation Service Agency.

D.  Power of Attorney, empowering person/s entitled to execute and sign any and all documents and to effect delivery of the Vessel notarially attested and legalized by U.K.Consulate or Apostille in Hong Kong.

E.  Official approval letter issued by The Ministry Of Transportation And Communication, R.O.C., for the sale of the Vessel to the Buyers (in Chinese version). This letter to be translated in English by a recognized Translation Service Agency.

F.  Class maintenance certificate issued by NK and dated not earlier than three (3) working days prior to delivery of the Vessel. (Original to be presented to Buyers' representative onboard the Vessel upon delivery and a fax copy to be provided at the closing.)

G.  Free from Mortgage and Registered Claims Certificate issued by the Kaohsiung Harbor Bureau, dated not more than three (3) banking days before delivery of the Vessel.

H.  Commercial invoice in triplicate for the Vessel.

I.  Commercial invoice for costs of bunker and lubricating oil remaining onboard.

J.  Letters of Undertaking from Sellers to Buyers

  (i)  to delete vessel's registry and provide  an original deletion certificate within 30 days after delivery of the vessel.

  (ii)  to apply to R.O.C Registry for, and to provide, closed CSR which will be sent to the Buyers (or to such address as the Buyers may direct),  and transfer of the Vessel's current complete CSR file from R.O.C. to the Malta Maritime Authority

    (iii) to deliver the Vessel physically to the Buyers immediately upon receiving payment of all monies due under the MOA.

    (iv) that to the best of Sellers knowledge and belief, the Vessel is not blacklisted / boycotted by any nation and / or organization.

    (v) to indemnify and hold the Buyers harmless against all claim or claims which may have incurred by the Vessel prior to the time of delivery of the Vessel to the Buyers.

K)   Protocol of delivery and acceptance, in two originals

Drafts of all Sellers' delivery documents except for those date essential to be provided to Buyers at least seven (7) days before delivery of the Vessel.

(B)  It is hereby agreed between the Sellers and the Buyers that the documents to be produced by the Buyers at closing pursuant to Clause 8 of the MOA shall be as follows:-

AA)  Copy resolutions of the board of directors of the Buyers approving the purchase of the Vessel from the Sellers and authorising the execution all relevant delivery documents, including the protocol of delivery and acceptance, duly attested by notary public and apostilled.

BB)  Power of attorney issued pursuant to A) above, empowering person/s entitled to execute and sign any and all documents including the protocol of delivery and acceptance, and to release payment for and to accept delivery of the Vessel, with Buyers' representative's signature duly attested by notary public as to genuineness and capacity to act on behalf of the Buyers and to legally bind the Buyers; duly attested by notary public and apostilled.

CC)  Certificate of good standing and incumbency in respect of the Buyers, issued by the Malta Financial Services Authority, dated not more than five (5) banking days before delivery of the Vessel;

DD)  Notarially attested and apostilled copies of the Certificate of Registration, and of the Memorandum and Articles of Incorporation of the Buyers

Drafts of Buyers' documents AA), BB) and DD), together with a proforma of CC), shall be provided for Sellers' confirmation at least ten (10) days before delivery of the Vessel.

(C)  All other terms and conditions of the MOA shall remain unaltered and in full force and effect.

Dated this 3rd day of June 2009

For the Sellers:


_____

**SINCERE NAVIGATION CORPORATION**
Represented by

Director / Attorney-in-Fact


For the Buyers:


_____

**MADLIENA SHIPPING LIMITED**
Represented by  *THOMAS JACOBSEN*

ADDENDUM  No. 2

Dated  3rd June 2009
to Memorandum of  Agreement dated the 6th May 2009 (the "MOA")
made between
Sincere Navigation Corporation (the "Sellers") and
Madliena Shipping Limited (the "Buyers")
Relating to the sale of "m/v Tien Shan" (the "Vessel")

This Addendum No.2 is made this 3rd day of June, 2009 by and between Sincere
Navigation Corporation (the "Sellers") and Madliena Shipping Limited (the
"Buyers").

Whereas

A.    Pursuant to Clause 5 of the MOA, the Sellers shall deliver the Vessel after her
      current laden voyage from Abbot Point, Australia to Dangjin, South Korea.

B.    The Buyers have the option of taking the Vessel on time charter trip (TCT) for
      one Pacific round voyage via Australia and taking delivery thereafter or of
      taking delivery of the Vessel in South Korea no earlier than 26th June 2009.

NOW THIS ADDENDUM NO.2 WITNESSETH as follows:

It is agreed between the Sellers and the Buyers that:

1) Sellers' intention is to tender NOR at noon local time on 26th June 2009 at one
safe port South Korea.

2) However the Buyers have the option to charter the Vessel for one Pacific round
trip via Australia which to be declared by 11th June 2009 1800 hours London time.
Charterers to pay for consumables at a lumpsum of US$ 5,000.00, if option of the
TCT is not declared.

-TIEN SHAN
ROC FLAG BLT 94
SDBC
128,826 MT DWT ON 16.326 M SSW 98 TPC
GRT/NRT : 66,623 / 42,726
LOA 265 BM 41
144,477 CBM GRAIN CAPA
9 HO 9 HA NO2-9 14.85X18.7M, HA SZ NO1 13.2X13.6M SPEED/BUNKER
CONSUMPTION BASIS UPTO AND INCLUDING BF 4/DS 3 AND NO
ADVERSE CURRENT ABT 13.25L/14.25B ON ABT 39MT IFO 380CST - NDAS

IN PORT IDLE 1IFO + 1.5MDO, WORKING 1IFO + 3.5MDO VSL BURNS MDO
IN NARROW OR RESTRICTED WATERS, ENTERING OR LEAVING PORTS
AND FOR GENERATOR START, STORMING AND ELECTRIC LOAD ON
VERY LOW OR UNSTEADY CONDITION.
ALL DETAILS ABT

-OWNERS TO CONFIRM THAT VSL IS RIGHTSHIP APPROVED

for

-Account : Madliena Shipping Limited of Valetta, Malta

-Delivery : on dropping outward last sea pilot (DOLSP) Dangjin any time day night
Sunday holiday included (ATNDSHINC). If Buyers declare their option after vessel
has completed discharge and sailed Dangjin, in which case delivery time and hire to
count retroactive to vessel DOLSP Dangjin.

-Layday / canceling day : 10 June 2009 0001 hours / 15 June 2009 2400 hours local
time

-For one TCT Australia to Singapore / Japan range including South Korea and
Malaysia.

- via safe berth(s), safe anchorage(s), safe port(s), always afloat, always within
Institute Warranty Limits in carrying harmless and lawful merchandise coal or iron
ore in bulk described/loaded/stowed/carried/discharged in accordance with latest
IMO rules/regulations/recommendations.

-redelivery on dropping anchor at one safe anchorage, within port limit of last
discharging port Singapore/Japan range including South Korea and Malaysia
ATNDSHINC

-hire USD 8,500 per day including overtime payable in advance within 3 banking
days from delivery onto charterer for approximate duration of the voyage. balance
(credit or debit) if any to be settled at time of delivery of the Vessel as per clause 3 of
the MOA dated 6th May 2009.

-bunker onboard on delivery about 720 MT IFO, 160 MT low sulphur FO  and
about 75 MT MDO. Bunker on redelivery about same quantities as on delivery.
Bunker costs to be settled at same prices both ends. USD415 PMT FOR both HFO
and low sulphur FO and  USD565 PMT FOR MDO.

-in lieu of cargo hold cleaning USD 5,500.- lumpsum

-communication /Victualling / entertainment costs  USD 1,250 Per month pro rate

-other terms as per c/p 'Tien Shan/STX Panocean charter party dated 30 April 2009 with logical alterations

3) If the TCT option in clause 2) above is declared then the Vessel will be delivered from Sellers to Buyers on completion of this TCT voyage as per MOA terms. Notices clause 5 line 52 to 54 to read The Sellers shall only provide the Buyers with 3/2/1 definite notice of delivery. It is strictly understood that the vessel will be delivered on completion of the TCT, within Singapore/Japan range, including South Korea and Malaysia, at the discharge port or nearest safe accessible berth or anchorage at nearest safe port.

4) If the option of the TCT is not declared then Sellers shall tender 15 and 10 days approximate notice of delivery and 3 days definite notice.

5) All other terms, conditions of the MOA and documents thereto shall remain unchanged and in full force and effect. Where there is a conflict between Addendum No 2 and MOA, the terms of the MOA are to prevail.

All information supplied herein by Sellers is given in good faith.

IN WITNESS WHEREOF, the parties hereto have executed this ADDENDUM by their duly authorized representatives on the date first above written.

For and on behalf of the Sellers          For and on behalf of the Buyers
Sincere Navigation Corporation            Madliena Shipping Limited

_____                   _____